*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J. THORNHILL, Minor.

UNPUBLISHED
April 27, 2023

No. 362195
Washtenaw Circuit Court
Family Division
LC No. 22-000026-NA

Before: JANSEN, P.J., and REDFORD and YATES, JJ.

YATES, J. (dissenting).

The lawyer-guardian ad litem (LGAL) argues that the trial court committed an abuse of its discretion in ruling that it lacked temporary emergency jurisdiction to hear the case involving JT's removal and in dismissing the petition. I agree. Under the Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA), MCL 722.1204(1), a Michigan court "has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child . . . is subjected to or threatened with mistreatment or abuse." The trial court failed to consider whether it should exercise temporary emergency jurisdiction to protect JT from mistreatment or abuse, which amounted to an abuse of discretion in this case.

The focus of "temporary emergency jurisdiction" under MCL 722.1204(1) is the degree of possibility that the *threat of harm* would continue. A New York decision interpreting emergency jurisdiction under the UCCJEA makes that point. In that dispute, *Matter of Alger v Jacobs*, 169 App Div 3d 1415, 1416; 93 NYS3d 492 (2019), the appellate court rejected the contention that the trial court erred when it found that it had temporary emergency jurisdiction over a child-protection proceeding. The issue was whether an "emergency" existed as required under subsection 76-c(1), the state's equivalent of MCL 722.1204(1). *Id.* The alleged emergency started as "acts of domestic violence perpetrated by the father against the mother, resulting in her hospitalization in an intensive care unit for several days." *Id.* at 1417. The father asserted that the emergency no longer existed once the mother fled to New York with the child because he remained incarcerated in Florida. *Id.* The appellate court affirmed the trial court's exercise of jurisdiction as proper because the mother fled to be safe from the father and the father's release date was not known. *Id.*

Here, by employing a narrow reading of what rises to the level of an "emergency," the trial court failed to seriously consider the *threat of harm* that mother could pose when she was released. Like the father in *Alger*, mother's unknown release date presented a continued threat of harm to JT. Also, mother would most likely return at some point to her home in Florida, where, without court involvement concerning this issue or joint custody, JT's father would be legally powerless to keep JT from mother. This constitutes an additional element to the continued threat of harm to JT. Although JT's father could seek to modify custody independently in a Florida court, he should not be required to do so. Instead, MCL 722.1204(4) prescribes the procedure that Michigan courts must follow when temporary emergency jurisdiction is requested of a court:

> *If a court of this state that has been asked to make a child-custody determination under this section is informed that a child-custody proceeding has been commenced in, or that a child-custody determination has been made by, a court of a state having jurisdiction under sections 201 to 203, the court of this state shall immediately communicate with the other court. . . .* The purpose of a communication under this subsection is to resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order. [Emphasis added.]

Failing to consider the continued threat also thwarts one of the purposes of the UCCJEA—to keep children safe. See MCL 722.1204(4). Thus, the trial court abused its discretion when it found that the emergency had ended and concomitantly dismissed the petition.

Additionally, the LGAL asserts that dismissing the petition without first contacting Florida authorities was not in JT's best interests because that ruling left no court with jurisdiction to keep JT safe. Again, I agree. The trial court focused its analysis on the timing of the emergency under MCL 722.1204(1), not its duty under MCL 722.1204(4) to communicate with Florida authorities. As with any statute, MCL 722.1204 must be read as a whole (and not in separate parts) to determine its appropriate meaning and function. *TruGreen Ltd Partnership v Dep't of Treasury*, 338 Mich App 248, 257-258; 979 NW2d 739 (2021). The trial court had a duty to contact Florida authorities before dismissing the petition. The trial court was asked, through the DHHS's petition, to consider removal of JT and termination of mother's parental rights due to alleged abuse. Because matters of alleged abuse and termination of parental rights are considered child-custody proceedings that would lead to a child-custody determination, the first requirement was met. Next, the parties did not dispute that Florida was JT's home state and a child-custody determination was in place there. The petition and the parties also advised the trial court that Florida was JT's home state and that a custody agreement concerning JT was in place in Florida, thereby fulfilling the final requirement set forth in MCL 722.1204(4).

Because the requirements of MCL 722.1204(4) were all met, the trial court was obligated to immediately communicate with Florida authorities "to resolve the emergency, *protect the safety of the parties and the child,* and *determine a period for the duration of the temporary order*." MCL 722.1204(4) (emphasis added). The trial court failed to do so, declining to authorize the petition in reliance solely upon MCL 722.1204(1). Although the trial court deemed the emergency period over, the trial court's dismissal of the case without first communicating with authorities in Florida did not render a result that would ensure JT's safety, nor did it allow Florida authorities time or an opportunity to consider whether to assert jurisdiction or leave the matter to Michigan as the more

-2-

appropriate forum. Further, because the trial court did not contact Florida authorities as required under MCL 722.1204(4), no court had jurisdiction over the matter. That decision fell outside the range of reasonable and principled outcomes. Therefore, the trial court abused its discretion when it found that the emergency was over and then dismissed the petition. Reversal of the trial court's order of dismissal is necessary to comply with the requirements of MCL 722.1204. Consequently, I would reverse the order of dismissal and remand the case for further proceedings.

/s/ Christopher P. Yates